No. 23-8002

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

---

FUND RECOVERY SERVICES, LLC

*Defendant-Petitioner,*

v.

LATONYA D. KITCHEN and KARENSA HUTCHENS

*Plaintiffs-Respondents*

---

**RESPONSE IN OPPOSITION TO PETITION FOR PERMISSION TO APPEAL OR FOR WRIT OF MANDAMUS**
On Petition From The United States District Court
For The Northern District of Illinois
Case No.1:22-cv-05351
The Honorable Elaine E. Bucklo, Judge

---

LAKESHORE LAW CENTER
Jeffrey N. Wilens, Esq. (SBN # 120371)
Macy Wilens, Esq. (SBN # 328204)
18340 Yorba Linda Blvd Ste 107-610
Yorba Linda, CA 92886
(714) 854-7205
fax: (714) 854-7206
jeff@lakeshorelaw.org
macy@lakeshorelaw.org

Attorney for Plaintiffs-Respondents
LATONYA D. KITCHEN and KARENSA HUTCHENS

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................i

TABLE OF AUTHORITIES ......................................................ii

OPPOSITION TO PETITION FOR PERMISSION TO APPEAL AND FOR WRIT OF MANDATE ............................................. 1

   I.   THE PETITION FOR PERMISSION TO APPEAL PURSUANT TO RULE 23 (F) SHOULD BE DENIED................1

     A.  FRS HAS FAILED TO ESTABLISH GROUNDS FOR REVIEW OF A BANKRUPTCY COURT DECISION PURSUANT TO RULE 23 (F). ....................................3

   II.  THE PETITION FOR WRIT OF MANDATE SHOULD BE DENIED. ...................................................... 6

     A.  THE LOWER COURT'S RULINGS REGARDING ARTICLE III STANDING WERE NOT PATENTLY ERRONEOUS....................................................... 7

     B.  THE LOWER COURT'S RULINGS REGARDING RULE 23'S REQUIREMENT OF PREDOMINATING COMMON QUESTIONS WERE NOT PATENTLY ERRONEOUS. ...................................................... 14

   CONCLUSION .................................................... 17

CERTIFICATE OF COMPLIANCE ..................................... 18

CERTIFICATE OF SERVICE ............................................. 19

# TABLE OF AUTHORITIES

Page

**Cases:**

*Arreola v. Godinez*
   546 F.3d 788 (7th Cir. 2008) ........................................................ 10

*Chrysler Fin. Corp. v. Powe*
   (11th Cir. 2002) 312 F.3d 1241 ........................................................ 4

Chrysler Fin. Corp. v. Powe (11th Cir. 2002) 312 F.3d 1241 ............... 4

*Driver v. Appleillinois, LLC*
   (7th Cir. 2014) 739 F.3d 1073 ......................................................... 3

*In re Adam Aircraft Indus.*
   (D.Colo. Feb. 23, 2010) 2010 U.S.Dist.LEXIS 24461 ...................... 5

*In re Brannan*
   2013 U.S.Dist.LEXIS 37019 (S.D.Ala. Mar. 5, 2013) ....................... 5

*In re Rhone-Poulenc Rorer Inc.*
   51 F.3d 1293 (7th Cir. 1995) ......................................................... 6

*J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*
   628 F.2d 994 (7th Cir. 1980) ......................................................... 6

*Pierre v. Midland Credit Mgmt.*
   (7th Cir. 2022) 29 F.4th 934 ...................................................... 9, 12

*Rodriguez v. Countrywide Home Loans, Inc.*
   421 B.R. 341 (S.D.Tex. 2009) ......................................................... 5

*TransUnion LLC v. Ramirez*
   (2021) 141 S.Ct. 2190 ................................................................. 7

**Statutes:**

Cal. Fin. Code § 22750 ................................................................. 8

Cal. Fin. Code § 22752 ................................................................. 8

**Court Rules:**

Federal Rules of Civil Procedure, Rule 23 (f) .................................. 3, 5

## OPPOSITION TO PETITION FOR PERMISSION TO APPEAL AND FOR WRIT OF MANDATE

### I. THE PETITION FOR PERMISSION TO APPEAL PURSUANT TO RULE 23 (F) SHOULD BE DENIED.

Defendant-Petitioner Fund Recovery Services, LLC (FRS) is trying to delay recovery for thousands of members of a certified class action so it can keep the millions of dollars it unlawfully took from them.

This action was filed in March 2021 in the bankruptcy court as an adversary action against FRS which, as a third party secured creditor, took over operations of a former lender named Argon Credit. FRS did not make any new loans, but it did aggressively try to collect money allegedly owed by thousands of debtors. The Respondents Kitchen and Hutchens brought the adversary action on behalf of a class of those borrowers who were coerced to pay money they did not legally owe. (Adversary Action, Doc. 1.)

As was its right, FRS raised an Article III lack of standing argument early in the proceedings, well before class certification. FRS argued then as it does now, that even though it forced the class members to pay money which they arguably did not owe, the Kitchen, Hutchens and the other class members did not have standing to seek restitution of that money they had lost. For reasons fully supported by the law, the argument was rejected and the motion to dismiss denied in September 2021. (Adversary Action, Doc. 27)

FRS then renewed the argument during the class certification motion, where an evidentiary showing was made by both sides. Again, the bankruptcy court rejected the argument and declined to deny certification on this ground of lack of standing. It also rejected an ancillary argument about predominance which was dependent on the standing analysis presented by FRS. It certified a class of borrowers who paid money to FRS, finding evidence showed every class member paid money to FRS based on the alleged illegal loan debt. That ruling was in September 2022. (Petition, Appendix C.)

FRS then persuaded the bankruptcy court to stay the class action so it could pursue an appeal to the district court on the same grounds. After full briefing, the district court issued a considered written opinion rejecting FRS' argument regarding standing (and its ancillary argument on predominance) in January 2023.

FRS now seeks yet another level of interlocutory review based on the same thrice rejected argument that borrowers who pay money which they did not legally owe somehow lacked standing to regain that money.

Although FRS complains bitterly that this adversary action is "undermining" the bankruptcy proceeding, that has not been the assessment of the bankruptcy court. Moreover, this Petition is still another stall tactic to prevent the class from recovering millions of dollars, despite having (according to FRS) only a frivolous argument.

## A. FRS HAS FAILED TO ESTABLISH GROUNDS FOR REVIEW OF A BANKRUPTCY COURT DECISION PURSUANT TO RULE 23 (F).

Federal Rules of Civil Procedure, rule 23 (f) states:

> A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A party must file a petition for permission to appeal with the circuit clerk within 14 days after the order is entered, or within 45 days after the order is entered if any party is the United States, a United States agency, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

On its face, this rule does not apply to this Petition because it only applies to decisions granting or denying class certification that were made by a district court (not a bankruptcy court). FRS argue the district court's decision was the functional equivalent of an order granting or denying class certification but it plainly was not. The district court simply declined to permit interlocutory appeal of the bankruptcy court's ruling. FRS does not cite any statutory or judicial authority to support its unusual interpretation of a clear statute.

Instead in a somewhat deceptive argument, FRS cites *Driver v. Appleillinois, LLC* (7th Cir. 2014) 739 F.3d 1073, 1076, for the proposition that a material change to an existing certification order can

trigger an appeal under Rule 23 (f). However, the class certification order in that case was issued by a district court not a bankruptcy court, so the citation does not aid FRS here.

What authority that is available directly rejects FRS' argument. In *Chrysler Fin. Corp. v. Powe* (11th Cir. 2002) 312 F.3d 1241, the 11th Circuit addressed this exact question whether Rule 23(f) allowed another layer of interlocutory appeal from the bankruptcy court after the district court declined to review a bankruptcy court's non-final order. Referring to the situation where an interlocutory appeal is taken from the bankruptcy court to the district court, the Court explained Rule 23(f) did not provide another layer of interlocutory review:

> In such a case, the district court's discretion to entertain an interlocutory appeal from the bankruptcy court is analogous to the court of appeals' discretion to entertain a Rule 23(f) appeal from the district court. See 28 U.S.C. § 158(a). **Thus, an appellate avenue to the district court free of the constraints of § 1292(b) already exists for a bankruptcy judge's class certification order**. **Nothing in Rule 23(f) suggests that a bankruptcy appeal to the district court would be inadequate, or that an appeal to the court of appeals should trump district court appellate jurisdiction over bankruptcy cases. In sum, the appellate avenue addressed by Rule 23(f) is already available to petitioners through an interlocutory appeal to the district court.** (*Chrysler Fin. Corp. v. Powe, supra*, 312 F.3d 1241 at pp. 1245–1246 (emphasis added).)

Courts in other circuits have also rejected use of Rule 23(f) to appeal bankruptcy court class certification orders. (See, e.g., *Rodriguez v. Countrywide Home Loans, Inc.* (S.D.Tex. 2009) 421 B.R. 341, 353 "Federal Rule of Civil Procedure 23(f)...applies only to district court certification orders and not to bankruptcy court orders"); In re Adam Aircraft Indus. (D.Colo. Feb. 23, 2010, Civil Action No. 09-cv-00728-CMA) 2010 U.S.Dist.LEXIS 24461, at *6-8, n. 3 ( "Nothing in the rule or any case law suggests that Fed. R. Civ. P., rule 23 (f) standards apply to a bankruptcy court class certification order that is appealed to a district court (or a bankruptcy appellate panel), even if Fed. R. Civ. P. 23 applies otherwise in adversary proceeding"); *In re Brannan* (S.D.Ala. Mar. 5, 2013) 2013 U.S.Dist.LEXIS 37019, at *13 ("Rule 23(f) would appear to have no direct application where, as here, the interlocutory appeal sought is from a bankruptcy court's class certification order").)

Therefore, this Court must reject the part of the Petition seeking relief based on Rule 23 (f). Respondents do not address the merits of FRS' standing argument or other arguments in this section, but do address it in the next section.

## II.  THE PETITION FOR WRIT OF MANDATE SHOULD BE DENIED.

FRS also argues it is entitled to obtain review of the class certification order under the All Writs Act.

Courts of appeal have sometimes granted interlocutory review of district court decisions certifying classes. In the case cited by FRS, *In re Rhone-Poulenc Rorer Inc.* (7th Cir. 1995) 51 F.3d 1293, the 7th Circuit permitted writ review of a district court order granting class certification where the order not only caused irreparable injury but was patently erroneous. (*Id.* at p. 1295.) The lawsuit in Rhone-Poulenc was a mass tort personal injury case which have been traditionally been viewed as problematic to certify. The court relied on the "extraordinary circumstances" of the case. (*Ibid.*) Thus, "mandamus relief is reserved for extreme situations. It does not serve as a substitute for appeal even though delay may result in inconvenience and added expense." (*J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.* (7th Cir. 1980) 628 F.2d 994, 997.)

Assuming that a certification order issued by a bankruptcy court and already reviewed by the district court is subject to mandamus review at all, FRS has failed to demonstrate either lower court's ruling was patently erroneous or an abuse of some mandate issued by the 7th Circuit.

## A.  THE LOWER COURT'S RULINGS REGARDING ARTICLE III STANDING WERE NOT PATENTLY ERRONEOUS.

FRS relies heavily on the Supreme Court's ruling in *TransUnion LLC v. Ramirez* (2021) 141 S.Ct. 2190. In that case, plaintiffs sued over violations of the federal credit reporting laws that caused the class members' credit files to contain false and defamatory information. With respect to one group of class members, the false information was incorporated into reports that were sent to third parties. For that group, the Supreme Court found they had suffered a concrete injury and had Article III standing. (*Id.* at pp. 588–589.) However, for another group of class members, while their consumer files still contained the false and defamatory information, reports containing that information were never disseminated to third parties. For that group, the Court found the although the mere existence of the false information in their files was a statutory violation, this violation did not result in any concrete injury, so those class members had no standing (at least not to bring a suit for damages as opposed to injunctive relief). (*Id.* at pp. 2210–2212.)

In the instant case, the class is comprised of California residents who took out loans from now-bankrupt Argon Credit LLC. The class demonstrated in the bankruptcy court proceedings that the loans were void under California law because the loans were not made by a

licensed lender. Despite a whole lot of rhetoric from FRS about losing money it advanced to Argon Credit, it does not dispute that the District Court summary of facts is correct:

> When Argon filed for bankruptcy, FRS sought to collect on the consumer loans. To do so, FRS allegedly presented itself to consumers as Argon, threatened to report delayed payments to credit rating agencies, and threatened to use or actually did use a provision in the consumer loan agreements that authorized Argon to debit consumers' checking accounts for amounts owed. . . .

> The plaintiffs then brought the underlying action, alleging violations of California's Unfair Competition Law ("UCL") and California's Fair Debt Collection Practices Act ("CFDCPA") based on FRS's attempts to collect on consumer loans that plaintiffs maintain are void. (Appendix A, Memorandum Opinion, p. 2.)

> FRS faults plaintiffs and the bankruptcy court for finding standing based solely on violation of statutory penalty provisions, Cal. Fin. Code §§ 22750, 22752. But in fact, the bankruptcy court specifically found that "[p]laintiffs' amended complaint alleges an **economic injur**y (the money FRS took from their bank accounts)" and that "**[p]laintiffs paid in response to an unlawful demand for payment**." (Appendix A, Memorandum Opinion, p. 4 (emphasis added).)

The district court noted that the 7th Circuit recently distinguished between a debtor who responds to an unlawful collection action by paying money or suffering some other detriment such as promising to

pay and one who simply is annoyed by the collection effort. In the first case there is standing, but in the second case there is not. (*Pierre v. Midland Credit Mgmt.* (7th Cir. 2022) 29 F.4th 934, 939.)

In its Petition, FRS admits that it took money from Respondents' bank accounts: "FRS collected $3,468.45 and $4,144.26 in payments from Plaintiff Kitchen and Plaintiff Hutchens, respectively." (Petition, p. 3.) FRS also admits that if Plaintiffs prove violations, California's Financing Law rendered these loans "void," meaning FRS has no right to principal or interest. (Petition, p. 4.)

Despite the clear facts and clear law, FRS insists that not only were the bankruptcy court and district court both mistaken, but their rulings were patently wrong. Has FRS presented any new arguments to show how the lower courts went so badly astray? No, none at all. FRS tenaciously repeats the same arguments already present in the bankruptcy and district court.

FRS does not deny the alleged violations would make the loans illegal and thus any resulting debt void. Instead, FRS argues regardless what the statutory scheme states, the violations are inconsequential and therefore did not directly harm the plaintiffs. However, the California legislature and not FRS determines what loans are legal and what loans are illegal. Having determined that Argon Credit's loans might have been illegal and thus void, the bankruptcy court correctly determined that because FRS took money from plaintiffs based on upon

the legal status of the loans, and coerced plaintiffs to pay money they legally did not owe, therefore plaintiffs (and the class) have standing. (Petition, Appendix C, pp. 4-6.)

While FRS claims Plaintiffs did owe the money, that is a question of the merits of the lawsuit and not one of standing. There is a distinction between the determination of standing and the determination of the merits of the claim. "Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing. Standing is a prerequisite to filing suit, while the underlying merits of a claim (and the laws governing its resolution) determine whether the plaintiff is entitled to relief." (*Arreola v. Godinez* (7th Cir. 2008) 546 F.3d 788, 794–795.)

Although FRS speaks of statutory "penalties," Plaintiffs do not seek damages or penalties; they seek restitution of money they paid as a result of an unlawful business practice (i.e., demanding or taking money the defendant was not legally owed). In short, FRS' argument that someone who pays money they legally do not owe and wants the money back has not suffered a concrete injury so as to confer standing is patently wrong, not the opinions issued by the lower courts.

FRS also claims plaintiffs did not present evidence in the bankruptcy court of economic injury, but that is not true. FRS admits it did collect

money from plaintiffs, so this is a disingenuous argument. The evidence showed FRS took money from each class member, an average of $2,137 per class member. (Petition, Appendix C, p. 13.)

Let us assume a borrower took out an illegal Argon loan, but never repaid any of it. In that case, there would be no standing because, despite the violation of the statute which made the loan void, there was no financial loss and therefore no concrete injury. By contrast, when the borrower pays money which he does not owe, or it is taken from his bank account by the lender or its successor, then there is a concrete injury.

The analogy to the present case would be the distinction between Argon borrowers who took out the illegal loans but never paid anything to FRS and those who also took out illegal loans and then made a payment they were not legally obligated to pay. All of the certified class members fall into the second group because making a payment to FRS is part of the class definition.

Significantly, despite multiple opportunities to do so, FRS still has not cited a case the for proposition that when a creditor demands payment on a debt which legally does not exist, and the debtor pays money, the debtor still has not suffered economic injury.

FRS does not deny Plaintiffs made payments to FRS and does not raise a typicality or adequacy challenge to their serving as class representatives, nor does it deny class members allegedly made payments to FRS.

FRS also cites *Pierre v. Midland Credit Mgmt.*, *supra*, 29 F.4th at pp. 938–939, 938–939, which discussed a series of claims under the federal debt collection practices act. In those examples, no standing was found, despite there being statutory violations, where the plaintiff only alleged the violation caused him to make a phone call to the debt collector or to worry about being sued for the debt. On the other hand, where the violations caused the plaintiff's credit score to decline or caused him to pay money or promise to do so (thus arguably resetting the statute of limitations on the debt), there was concrete injury and standing was found. This case, although cited by FRS, is completely supportive of the bankruptcy court's ruling that Plaintiffs and the class members, all of whom paid money which arguably they did not owe to FRS, had suffered a concrete injury and had standing.

In a very confusing fashion, FRS insists that the Plaintiffs did not pay money they did not owe. FRS apparently means to argue that even if the loans were void by operation of law, they were still enforceable loans until a court entered a final judgment finding them void. In other

words, supposedly FRS was free to demand payment or just take payment from the Plaintiffs' bank accounts and the only way to stop that was to file a lawsuit.

But that thinking is backwards. The default is that various laws create legal obligations for borrowers to pay money to creditors. Otherwise, borrowers owe nothing. The general approach is to recognize a legal claim known as breach of contract, but in the lending industry there are numerous laws and regulations that must be satisfied, or the lender has no right to repayment. For a loan to be something more than just a gift, a lender must comply with some basic requirements to create a valid contract. When the lender is a commercial lender lending money to consumers, there may be even more stringent requirements.

Moreover, FRS imagines the licensing laws do not apply unless the borrowers file a lawsuit. But they did file a lawsuit. This is the lawsuit. They paid money which (if they are correct on the facts and law) they did not owe and now they want it back. By paying money they did not owe, they suffered a concrete injury.

## B. THE LOWER COURT'S RULINGS REGARDING RULE 23'S REQUIREMENT OF PREDOMINATING COMMON QUESTIONS WERE NOT PATENTLY ERRONEOUS.

FRS implicitly concedes there is no basis to review the bankruptcy court's determination that common questions predominated unless this Court grants review on the Article III issue. (Petition, p. 14.) This concession is fully justified. As the bankruptcy court explained:

> Questions such as the validity of the Argon loan agreements and the lawfulness of FRS's collection attempts can be answered on a class-wide basis. FRS states that individual questions predominate because each class member will have to prove an economic loss and causation and, moreover, that there will need to be an individualized determination of each class member's outstanding loan liability. While each class member's economic loss is an individualized question, "[t]he fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 379 (7th Cir. 2015). Because Plaintiffs' claims are based upon FRS's conduct common to all class members—and can be resolved for all class members in a single adjudication—the Court is satisfied that common questions predominate over individual ones. (Petition, Appendix C, p. 12.)

In other words, either the Argon loans were illegal, or they were not. If they were illegal, it is for the same reason or reasons as to all class members. If they were legal, then all class members will lose on the merits.

In arguing for review, FRS does not point to any individual facts that would predominate. Instead, FRS repeats the same argument that each class member lacks standing (either under Article III or under the state statute, which also requires that the class members have paid money as a result of the unlawful business practice.)

Although FRS claims each class member would have to present individualized evidence, the type of evidence it suggests would be necessary is completely irrelevant. For example, FRS claims each class member would have to prove he paid more money for the loan than he normally would have had to pay for such a loan. But there is no claim in this lawsuit that the loans were "too expensive" by market standards. So that fact would be irrelevant.

Second, FRS points to the fact that Plaintiffs received more money than they paid back. Apart from the fact there are some factual disputes on this point, the bankruptcy court correctly found that it would make no difference if they paid less money back than they borrowed. The premise of the lawsuit is that they owed **nothing.** They were not required to pay any money back at all. The same applies to all the class members if the Plaintiffs win on the merits. Contrary to what the Petition argues, class members will not need to "put forward individualized evidence that they paid more money to FRS than their loan agreement with Argon required." (Petition, p. 18.) The loan agreement required them to pay nothing if it was void.

Third, the bankruptcy court correctly distinguished between the question of how much each class member lost (i.e., how much they paid), which does not affect certification of the class, and whether each class member suffered economic injury (i.e., did they pay any money). FRS failed below and fails now to explain why it cannot be established on a classwide basis that each class member suffered economic injury by paying money if it turns out they did not owe the money.

FRS also claims individual questions would predominate because of the statute of limitations on the claims for unfair debt collection practices. However, the bankruptcy court correctly ruled that this defense could not be assessed at the class certification stage and FRS cites no contrary authority. Moreover, FRS failed to present any evidence that any class members' claims were time-barred in light of the fact the bankruptcy stay tolled the statute of limitations for years and is still in effect as the bankruptcy case is still pending. Finally, the bankruptcy court correctly determined that FRS had records that showed when it was able to collect money from the class members, so class members will not need to present individualized evidence on that undisputed fact.

# CONCLUSION

For the foregoing reasons, the Petition for Permission to Appeal or for Mandate should be denied.

|  |  |
|---|---|
|  | Lakeshore Law Center |
|  | Respectfully submitted, |
| Dated: February 17, 2023 | By: /s/ Jeffrey Wilens |
|  | Jeffrey Wilens |
|  | Attorney for Plaintiffs-Respondents LATONYA D. KITCHEN and KARENSA HUTCHENS |

## Certificate of Compliance

I hereby certify that this Response to Petition conforms to the form and length requirements contained in Federal Rules of Appellate Procedure 5(c), 21(d), and 32(c).

The length of this Petition is **3,688** words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.

Lakeshore Law Center

Respectfully submitted,

Dated: February 17, 2023     By: /s/ Jeffrey Wilens

Jeffrey Wilens

Attorney for Plaintiffs-Respondents
LATONYA D. KITCHEN and
KARENSA HUTCHENS

# Certificate of Service

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the Appellate CM/ECF system on February 17, 2023**.** I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

<table>
<tr><td></td><td>Lakeshore Law Center</td></tr>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>Dated: February 20, 2023</td><td>By: /s/ Jeffrey Wilens</td></tr>
<tr><td></td><td>Jeffrey Wilens</td></tr>
<tr><td></td><td>Attorney for Plaintiffs-Respondents<br>LATONYA D. KITCHEN and<br>KARENSA HUTCHENS</td></tr>
</table>